JOHN A. CROWLEY CO. v. CLARK EQUIPMENT CO.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 104.

1. SALES ⟨⟩277—CONTRACT OF WARRANTY CONSTRUED AGAINST PARTY PREPARING.

Where the warranty on a sale of goods was contained in the order and a letter, both of which were prepared by the buyer, any doubt as to the construction will be resolved against the buyer.

2. SALES ⟨⟩284(1)—WARRANTY OF QUALITY MUST BE SUBSTANTIALLY COMPLIED WITH.

There must be a substantial compliance with a warranty of quality on a sale of goods, and a substantial failure is a breach.

3. SALES ⟨⟩445(4)—BREACH OF WARRANTY ON CONTROVERTED FACTS IS QUESTION FOR JURY.

When the question of substantial failure or compliance with a warranty of quality depends on controverted and material facts, such facts are for the jury.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. SALES ☞145(4)—BREACH OF WARRANTY A QUESTION FOR JURY.

Whether hair-line cracks on the surface of steel ingots constituted breach of a warranty that they would be free from serious surface defects was a question for the jury, and a motion for a directed verdict was properly denied, though the existence of such hair-line cracks was admitted.

5. APPEAL AND ERROR ☞1003—COURT CANNOT REVERSE ON WEIGHT OF EVIDENCE.

A United States appellate court has no power in actions at law to reverse, because the verdict is against the weight of the evidence.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Clark Equipment Company against the John A. Crowley Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties will be referred to as in the court below. Verdict was in favor of plaintiff in an action for goods sold and delivered. The goods were "electric furnace ingots" of steel, manufactured for defendant by plaintiff under (in the language of the pleadings) a "written contract."

The defense, other than certain denials not now material, was the affirmative and separately pleaded assertion "that said ingots were not made in accordance with the agreement between the parties, [because] they were not of the specified analysis, and were not of the agreed quality, but were defective, and could not be used by" defendant.

The statement about analysis has produced no argument in this court, and seems to have no evidence to support it; it may be disregarded. The assertion that the ingots "could not be used" may also be disregarded. Even if such issue was intended to be raised by the words, and if the words are sufficient for the purpose, there was no evidence that plaintiff made the ingots for a particular or peculiar use, communicated to it by defendant.

The substance of the case in this court is the denial of defendant's motion for a direction made at the close of the evidence. The motion was put "on the ground that the plaintiff has not shown a compliance with its contract and its warranty to furnish steel ingots to the defendant without surface defects and seams."

The trial judge refused this request, and required the jury (there being no questions of quantity or price in doubt) to answer the following specific question: Did "the ingots delivered by the plaintiff to the defendant conform to the terms of the contract"? Verdict was "Yes;" judgment was for amount admitted, if anything was due, and this writ followed.

Geo. P. Breckenridge, of New York City, for plaintiff in error.
Henry M. Stevenson, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The evidence made it clear that defendant sent these ingots to a reputable forge, where in the process of forging they developed or disclosed cracks or seams which rendered them unfit for gun forgings. But what was their condition when delivered to defendant was the subject of acute difference of sworn opinion.

Plaintiff admitted the existence of "hair-line" cracks on the ingot surface, but averred that it had "chipped out" the same so that the ingot was either "perfect" on delivery, or was made so thereafter, at its expense. There was evidence that such cracks were a necessary result of

cooling of metal, and their removal produced perfection, and also that steel of the composition and ingot size contracted for could not resist without cracking the method of forging adopted by defendant. On the other hand, defendant gave evidence that "fine cracks" discoverable by "a more or less careful scrutiny" existed before forging, and under "the hammering process  *  *  *  they became larger."

The warranty insisted on is expressed in the order for manufacture given by defendant to plaintiff, and in a nearly contemporaneous letter explaining (as far as it ever was explained by plain writing) what was wanted. The order recites that its acceptance "constitutes a guaranty that all steel furnished [under the order] will be free from all physical defects." The letter declares that plaintiff's "responsibility consists" in furnishing steel "free from surface defects and an unusual amount of pipe"; wherefore (wrote defendant) "please use care;  *  *  *  serious surface defects will be cause for rejection of the entire ingot."

[1] This is the warranty—the "pipe" part of it is now immaterial—and it is wholly contained in contractual writings prepared by one party; therefore the rule applies that, if there be doubt as to construction, such doubt is to be resolved against the party preparing the form of words. Wilson v. Cooper (C. C.) 95 Fed. 628.

[2, 3] It is a warranty of quality, as to which the rule is common knowledge that there must be a substantial compliance, and substantial failure is a breach. When the question of substantial failure or compliance depends on controverted and material facts, such facts are for the jury. The foregoing is not, and indeed cannot be, denied, and the only point properly submitted to us is whether there were any such facts shown, and that is but another way of saying that what plaintiff called "hair-line cracks," removed by chipping, constituted "serious surface defects."

[4] It seems to us that a very plain jury issue was presented; for the jury "had the right to consider the meaning or sense in which any term was used by the parties as relating to the qualities or qualifications [of steel ingots], and to adopt that sense for the purpose of determining what was warranted, and wherein the warranty failed" if it did. Bodurtha v. Phelon, 2 Allen (Mass.) 347.

The theory of suits or defenses such as this was long ago tersely stated by Lord Tenterden, speaking of an action on the warranty of a horse; his words may be thus modernized: In assumpsit the rule is that you must prove the whole of the consideration, but you need not prove the whole of the promise. The consideration here is that defendant would buy ingots of plaintiff at a certain price, and the promise is that the ingots shall be free of serious surface defects. The very words of the promise need not be laid or proved; it is sufficient to state the substance; if that be proved, it is enough to support the action or defense. But in this case it is quite clear that hair-line cracks chipped out before delivery and serious surface defects are not convertible terms, wherefore the motion to take the case from the jury was rightly refused. Coltherd v. Puncheon, 2 Dow. & Ry. 10.

Some matters of evidence have been discussed; we only note that

plaintiff in error complains that certain evidence, though stricken out on its motion, was admitted by error so prejudicial that striking it out could not cure. We think that whatever error was committed was in granting the motion to expunge.

[5] The case has been briefed by both parties as if this court were authorized to reverse because the verdict was against the weight of evidence. That no appellate court of the United States has such power in actions at law has been too often said to permit further citations.

Judgment affirmed, with costs.